LISA KOBIALKA (State Bar No. 191404)
JAMES HANNAH (State Bar No. 237978)
Brown Rudnick LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065
Telephone: (669) 469-1800
Facsimile: (669) 469-1801
Email: lisa.kobialka@brownrudnick.com
Email: james.hannah@brownrudnick.com

*Attorneys for Plaintiffs*
Bracket Company Inc. and
Baton Corporation Ltd.

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| BRACKET COMPANY INC. and BATON CORPORATION LTD.,<br><br>Plaintiffs,<br><br>v.<br><br>SHAW WALTERS and DOES 1-2,<br><br>Defendants. | Case No. ______________<br><br>**COMPLAINT FOR:**<br>**1) MISAPPROPRIATION OF TRADE SECRETS UNDER 18 U.S.C. § 1836,**<br>**2) MISAPPROPRIATION OF TRADE SECRETS UNDER CAL. CIV. CODE § 3426, *ET SEQ.***<br>**3) BREACH OF CONTRACT;**<br>**4) CONVERSION;**<br>**5) INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS;**<br>**6) FALSE ADVERTISING UNDER CAL. BUS & PROF. CODE §§ 17500 *ET SEQ.*;**<br>**7) FALSE DESIGNATION OF ORIGIN UNDER SECTION 43(A) OF THE LANHAM ACT;**<br>**8) UNFAIR COMPETITION UNDER CAL. BUS & PROF. CODE §§ 17200 *ET SEQ.***<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Bracket Company Inc. ("BCI") and Baton Corporation Ltd. ("Baton") (collectively "Plaintiffs") file this Complaint against Defendants Shaw Walters ("Defendant" or "Walters") and Does 1-2, alleging as follows:

This case is about Walters and those in active concert with him engaging in brazen and deliberate misconduct, ranging from theft of trade secrets to intentionally disregarding his obligations under contract. Walters, through improper means, stole the highly confidential and proprietary source code that powers Pump.fun, one of the most successful cryptocurrency platforms built on the Solana blockchain. BCI owns that source code (the "Pump.fun Source Code") and Baton maintains it for BCI. It is a closely guarded trade secret that has never been published or licensed to the public and kept confidential behind contracts, passwords, firewalls and restricted systems.

The Pump.fun platform combines smart contracts with frontend and backend application code to automate token creation and liquidity management, so users can launch and distribute digital assets without specialized blockchain-development expertise. Since its launch, Pump.fun has facilitated the creation of millions of digital assets, generated hundreds of millions of dollars in revenue, and become a significant source of activity on the Solana blockchain. Pump.fun's success derives in substantial part from Plaintiffs' proprietary software. The Pump.fun Source Code is valuable intellectual property. It is protected by Plaintiffs' Terms and Conditions governing use of the Pump.fun platform (the "Terms and Conditions"). The Source Code is maintained as highly confidential and trade secret information.

Walters has published extensively about his scheme and has turned his theft into a business. Over a public campaign on his X account, @shawmakesmagic, Walters has announced repeatedly and to tens of thousands of viewers, that he has taken the Pump.fun Source Code using AI agents

"byte-for-byte," that he has published nearly 100% of the Pump.fun Source Code to a public code source repository. Walters has further solicited and incentivized third parties to participate in his efforts through the X social media platform and his own websites. For example, through an advertised "PUMPFUN-SOURCE" project on his slop.cash platform that he also promotes on X, Walters funded a "security bount[y]" of 10 million $PMUP tokens per monthly milestone to participants who help "[r]everse engineer the pump.fun smart contracts byte-for-byte into open source." He has thanked the "crypto people for the fees related to the pumpfun reverse engineering," and bragged that it is "literally paying for all of my surgeries." When asked why he was undertaking this effort, Walters responded: "Because I can." There can be no question that Walters' conduct is willful, malicious, and intentional.

Walters is not acting alone. After Walters publicly disclosed and disseminated the Pump.fun Source Code, many others, including Defendants Does 1 and 2, joined and expanded his efforts. Within the last 24 hours, Doe 1 cloned and republished the repository of source code, promoted the Source Code through social media and GitHub, and is using the Source Code to develop and market a competing launchpad called ReversePump. Doe 2 likewise acquired and disseminated the Source Code, publicly acknowledged helping reverse engineer Pump.fun, and is using the Source Code to develop and promote a competing launchpad known as Beam.

Together, the Does have sought to continue, expand, and profit from Walters' campaign by encouraging third parties to copy, fork, contribute to, and build upon Plaintiffs' Source Code. Defendants are infringing and putting at risk Plaintiffs' Source Code to enrich themselves. Walters' conduct and the conduct of Does 1 and 2 is deliberate and ongoing and their conduct constitutes, *inter alia*, deliberate and intentional breach of Plaintiffs' Terms and Conditions, trade secret misappropriation and unfair competition. By publicly soliciting and compensating others to

participate in that effort, Walters and the Does are also intentionally inducing third parties to violate their own contractual obligations to Plaintiffs. The immediate and irreparable harm is significant, and Defendants need to be stopped immediately.

As a result, Plaintiffs bring this action and are seeking emergency injunctive relief to stop Defendants' malicious and unlawful conduct.

**THE PARTIES**

1. BCI is a corporation organized and existing under the laws of British Virgin Islands with its registered office at SHRM Trustees (BVI) Limited, Trinity Chambers, P.O. Box 4301, Road Town, Tortola, British Virgin Islands. BCI owns all of the intellectual property associated with the Pump.fun platform, including the Source Code.

2. Baton is a corporation organized and existing under the laws of the United Kingdom, with its registered office at 82a James Carter Road, Mildenhall, Bury St. Edmunds, England, IP28 7DE. Baton has a license to the Source Code and maintains it for BCI.

3. Defendant Walters is an individual who, on information and belief, is a citizen of the State of California and resides and is domiciled in San Francisco, California, within this District. Walters is the founder, owner, and Chief Executive Officer of Eliza Labs, Inc. ("Eliza Labs"), a Delaware corporation with its principal place of business at 2 Embarcadero Center, Floor 8, San Francisco, California, through which Walters develops and operates the ElizaOS platform and competes with BCI in the Solana token-launch space. From and within this District, through his X account, @shawmakesmagic, Walters announces, directs, and carries out the theft, reproduction, and public dissemination of the Source Code, and solicits and offers to compensate others to help complete that effort.

4. The true identity of Defendant Doe 1 is unknown, but Plaintiffs are informed and believe that this party controls the X account "@ReversePumpfun." Additionally, Defendant Doe 1 controls the GitHub account identified by the alias "ReversePump" which contains the repository "pumpfun-source," a clone of the Pump.fun Source Code stolen by Walters.

5. The true identity of Defendant Doe 2 is unknown, but Plaintiffs are informed and believe that this party is the individual who controls the X account "@ShayanelH." Additionally, Defendant Doe 2 controls the GitHub account identified by the alias "shawkkkkk" which also contains the repository "pumpfun-source," another clone of the Pump.fun Source Code, as well as the "beam" repository, a launchpad built on the Pump.fun Source Code. On information and belief, Doe 2 also serves as the Chief Technology Officer of $BASEJUICE, a technology venture in the digital-asset ecosystem.

6. Defendant Does 1-2 (collectively "Does") are presently unconfirmed because, in part, they have attempted to conceal their identity. Plaintiffs are informed and believe that once further details are obtained in discovery that will lead to the identification of the Does, Plaintiffs will amend this Complaint to allege their true names and capacities, if and when they are discovered.

## JURISDICTION AND VENUE

7. Jurisdiction and venue for this action are proper in this District. This action arises under the Defend Trade Secrets Act, 18 U.S.C. § 1836. This Court has original jurisdiction over this controversy for misappropriation of trade secret claims pursuant to 18 U.S.C. §1836(c) and 28 U.S.C. § 1331 and Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). This Court has jurisdiction over the unfair competition claim under 28 U.S.C. § 1338(b) because those claims are joined with substantial and related claims under the Defend Trade Secrets Act. This Court has

supplemental jurisdiction over the remaining state-law claims under 28 U.S.C. § 1367(a) because they are so related to the federal claims that they form part of the same case or controversy.

8. This Court has personal jurisdiction over Walters because, on information and belief, he is a citizen of, and is domiciled in, California, within this District, and regularly and continuously conducts his business and public activities here.

9. This Court also has personal jurisdiction consistent with the principles of due process and the California Long-Arm Statute, Cal. Code Civ. Proc. § 410.10, including for the reasons set forth below.

10. Walters purposefully directs at this District the conduct giving rise to this action. Upon information and belief, Walters, from and within this District, has been stealing, reproducing, and publicly disseminating the Source Code, violated his obligations to Plaintiffs under Plaintiffs' Terms and Conditions, as well as encouraged and offered compensation to others to assist him in such unlawful conduct. Walters carries out this conduct through, among other things, his X account, @shawmakesmagic, and platforms and services he owns, operates, or controls, including the ElizaOS agentic artificial-intelligence platform and slop.cash, all while acting from and within this District. Walters' unlawful conduct, which constitutes trade secret misappropriation, willful and deliberate violation of Plaintiffs' Terms and Conditions, intentional interference with Plaintiffs' contractual relationships, and unfair competition, are directed from and occur in substantial part within this District. Upon information and belief, Walters derives financial and other benefits from this conduct within this District, including through his "$PMUP" token bounty program. The injuries caused by Walters' conduct are foreseeable, intended, and ongoing consequences of conduct purposefully directed from and within this District.

11. Plaintiffs are informed and believe that the Does are also subject to personal jurisdiction in this district and the exercise of jurisdiction over Defendants is proper under Cal. Code of Civil Proc. § 410.10, as detailed more fully below.

12. The Does have transacted business in California and throughout the United States that gives rise to Plaintiffs' claims, including by developing, operating, promoting, and commercializing competing launchpad platforms built on Plaintiffs' misappropriated Source Code. The Does engaged in intentional, wrongful, unlawful, and tortious conduct expressly aimed at California and the United States, the effects of which they knew and intended would be felt in California and throughout the United States. Among other things, the Does participated in the acquisition, theft, misappropriation, dissemination, and exploitation of Plaintiffs' Pump.fun Source Code; copied, cloned, forked, republished, used, promoted, and contributed to repositories containing that code; promoted those repositories through social-media accounts and other online communications; and used the code to develop, market, and solicit users for competing products, including the reversepump.fun and Beam platforms. The Does further incorporated Plaintiffs' trademarks, brand identity, and proprietary technology into those activities and directed multiple forms of communication for the purpose of planning, coordinating, promoting, and carrying out the unlawful conduct alleged herein. The Does knew that these activities would cause competitive, economic, and reputational injury to Plaintiffs in California and throughout the United States, and Plaintiffs' claims arise directly out of and relate to those activities.

13. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b), (c), and § 1400(a). Upon information and belief, Walters resides in this District within the meaning of § 1391(c) and conducts substantial business activities in this District. In addition, a substantial part of the events giving rise to Plaintiffs' claims occurred in this District.

## FACTUAL BACKGROUND

14. BCI owns the highly confidential, proprietary software, including the Pump.fun Source Code, which powers the Pump.fun cryptocurrency platform, a widely used and commercially successful cryptocurrency platform that enables users to create, launch, trade, and manage digital assets on the Solana blockchain. Baton developed the Pump.fun Source Code and has a license to the Pump.fun intellectual property. The platform's success is derived, in substantial part, from BCI's proprietary technology, including the Source Code.

15. The Source Code is original software and is maintained as trade secrets and highly confidential information. Plaintiffs have undertaken extensive measures to protect it. Examples of measures taken to maintain the secrecy and confidentiality of the Pump.fun Source Code include requiring any user of the Pump.fun website and mobile application to assent to the Terms and Conditions that have prohibitions to protect the code, obligating anyone who works on or has access to the code at Baton to maintain its confidentiality. The Pump.fun Source Code is maintained on secure computer systems with restricted access, firewalls, private networks and password protection to ensure its security and confidentiality. Additionally, access to the Pump.fun Source Code is only granted to a limited number of individuals who are legally obligated to protect its confidentiality. These examples of security measures are not exhaustive. Plaintiffs have expended significant amounts of time, effort, and money to preserve and maintain the confidentiality of the Source Code.

16. The Pump.fun Source Code includes non-public source code, backend application code, internal system architecture, and related technical information used in connection with the Pump.fun platform. The Pump.fun Source Code is not publicly available, derives independent economic value from not being generally known, and is protected through access restrictions and contractual prohibitions on copying, reverse engineering, and related conduct.

17. Access to the Pump.fun platform for all users is predicated upon acceptance of the Pump.fun Terms and Conditions. Ex. 1 (screen shot of the first page of the website). Walters is an avid user and holds and receives creator fees from $PMUP, a token created and traded through Pump.fun, and his use of Pump.fun's token-creation and trading functionality required him to assent to the Terms and Conditions. *Id.*; Ex. 2 (Terms); Ex. 3 ($PMUP Trading Page) (showing user "shawmakesmagic" as the top holder of $PMUP tokens). Walters agreed to Plaintiffs' Terms and Conditions, but he nonetheless willfully violated their terms.

18. Section 21 of the Terms and Conditions identified the prohibited conduct that Walters assented to, but nonetheless, disregarded and violated. For example, pursuant to subsection j of Section 21 of the Terms and Conditions, entitled Prohibited Use, Walters was forbidden from disassembling, decompiling, reverse-engineering or otherwise attempting to derive the source code, object code underlying concepts, ideas and algorithms of the Pump Platform, Pump Services or any components thereof.

> **21. Prohibited Use**
>
> By using the Pump Platform and Pump Services, including carrying out any Transaction, and without prejudice to any other restriction or limitation set out in these Terms, ***you agree that you will not***: . . .
>
> > j. disassemble, decompile, ***reverse-engineer or otherwise attempt to derive the source code, object code underlying concepts, ideas and algorithms of the Pump Platform, Pump Services or any components thereof***;

Exhibit 2 (Terms) at 17 (emphasis added).

19. Subsection k of Section 21 also prohibited Walters from copying, reproducing, transmitting, disseminating, publishing, or otherwise disclosing any of BCI's intellectual property.

> **21. Prohibited Use**
>
> By using the Pump Platform and Pump Services, including carrying out any Transaction, and without prejudice to any other restriction or limitation set out in these Terms, ***you agree that you will not***: . . .
>
> > k. modify, replicate, duplicate, copy, download, store, further transmit, disseminate, transfer, disassemble, broadcast, publish, remove or alter any copyright statement or label, or licence, sub-licence, sell, mirror, design, rent, lease, private label, grant security interests in such Pump IP or any part of the intellectual properties, or create derivative works or otherwise take advantage of any part of the Pump IP;

Exhibit 2 (Terms) at 17 (emphasis added).

20. Subsection h further prohibited Walters from using "web crawlers, bots, spiders or other automatic devices" to "obtain any materials, documents or information in any manner not purposely provided," or "forg[ing] headers, impersonat[ing], or otherwise manipulat[ing] identification, to disguise [his] identity or the origin" of their actions. Exhibit 2 (Terms) at 17 (emphasis added).

21. Plaintiffs' Terms and Conditions coupled with the access controls and security measures put in place protect the trade secret and highly confidential nature of the Pump.fun Source Code.

22. Beginning in late October 2026, Walters publicly documented his effort to reproduce BCI's Source Code. For example, he declared on X: "I'm reverse engineering the pumpfun contracts[.] Why? Because I can." Ex. 4 (@shawmakesmagic X Post dated 10/26/2026) at 1.

23. Walters' stated goal was not to build something similar, but to take it. In his own words, Walters wanted to copy the Pump.fun Source Code exactly: "This isn't about making a smart contract LIKE the original contracts. This is about making a byte-identical version. Identical. With the same bugs, same flaws, same everything." Ex. 4 (@shawmakesmagic X Post dated 10/26/2026)

at 1. A match that precise is not independent creation. It is a copy that only could have been made by unlawfully obtaining and using the actual Pump.fun Source Code.

24. Walters has published and continues to publish Pump.fun Source Code that he has stolen in a public GitHub repository, lalalune/pumpfun-source, (the "Repository") described as a Rust reconstruction of Pump.fun's Solana programs from captured binaries. Ex. 5 (GitHub Repository). As of October 28, 2026, the Repository reported that 3,321/3,338 function windows match (99.5%), with several components reproducing their complete meaningful ELF. Ex. 5 (Github Repository) at 1-2; Ex. 6 (@shawmakesmagic X Post dated 10/29/2026) at 1.

25. The Repository's own ledger reflects that he has captured and reproduced BCI's website and application code, reporting a Frontend JavaScript capture of 648 / 648 scripts and a Frontend factory extraction of 4915 / 4915 inventoried variants. Ex. 5 (Screenshot of GitHub Repository) at 2-3.

26. Walters claimed that he allegedly "reverse engineered" the Source Code, which is forbidden by and a violation of the Terms and Conditions. What Walters actually did was disguise an automated program as a "Googlebot," which is a known visitor to websites as a legitimate search-engine indexer. Walters' malicious program, cloaked with that false identity, crawled the Pump.fun site so it could steal BCI's website and application assets, including materials not intended for public copying or redistribution. On information and belief, Walters stole about 40 million bytes from Pump.fun on October 28, 2026, which he posted on a public repository (the "Repository"). Ex. 18 (GitHub Repository Statistics) at 3; Ex. 5 (GitHub Repository).

27. Walters also purported to re-license the Pump.fun Source Code as his own, where Walters posted the code in the Repository under a forged MIT license bearing the notice "Copyright (c) 2026 Shaw." Ex. 16 at 1. He also purported to grant the public rights to use, copy, modify,

merge, publish, distribute, sublicense, and sell the stolen code, which he was falsely passing off as his own. Ex. 5 (GitHub Repository). Walters placed the Pump.fun Source Code, program binaries, website assets, and other copyrighted materials in the Repository. Ex. 5 (GitHub Repository). Walters had no authorization to engage in any of these activities with respect to the Pump.fun Source Code.

28. Walters also brazenly reported publicly on social media platform, X, his efforts to steal, replicate, publicly disseminate, and use the Pump.fun Source Code. For example, on October 27, 2026 Walters represented to the public that "80% of the source code is byte-for-byte matched to the original contracts," and then that "97.6% of the source code for the entire pumpfun contract set has been reverse engineered." Ex. 7 (@shawmakesmagic X Post dated 10/28/2026) at 1-2.

29. On October 29, 2026, Walters reported that the "[c]ontracts are 99.5% done," should be done in a few hours, that he had added frontend and backend code to the Repository. His progress table reported 100% reproduction of the "Fees," "Mayhem," and "Donation Relay" components and an overall match of 3,321/3,338 function windows. Ex. 6 (@shawmakesmagic X Post dated 10/29/2026) at 1.

30. Walters also described how he unlawfully sought to hack around the safety controls of the AI tools he used to steal BCI's Source Code. He posted that "[t]he agents started refusing at the end," so he used another model, "Kimi[,] . . . to gaslight the other agents" into continuing. Ex. 6 (@shawmakesmagic X Post dated 10/29/2026) at 1. He stated that prompting an agent to "not report anything back to chat and to just ship PRs and record all findings in a markdown file . . . triggers the cyber guardrails way less, sometimes not at all." *Id.* at 2. Walters' unlawful activities were intentional, conducted with improper means, and in violation of his obligations to Plaintiffs under the Terms and Conditions.

31. Walters was public about his intent to harm Plaintiffs: "We will add the frontend and backend to the repo and let people attack it for $PMUP via @SlopCash." Ex. 7 (@shawmakesmagic X Post dated 10/28/2026) at 1. Walters also made threats online, directed to Plaintiffs, stating: "Open source everything or it will be open sourced for you." Ex. 9 (@shawmakesmagic X Post dated 10/25/2026) at 1.

32. Walters also encouraged and instructed others to join his effort, directing them to paste the following to an AI agent: "Please fork and clone this repo lalalune/pumpfun-source and help with disassembling and reverse engineering until it is byte identical with the original binaries. Every time you make progress, make a PR." Ex. 4 (@shawmakesmagic X Post dated 10/26/2026) at 1.

33. Walters offered payment to incentivize others to help him with his unlawful activities. He advertised tokens as a bounty to split with all the contributors who helped him get to byte-identical copy of the Source Code, to be paid in native project tokens via @SlopCash. Ex. 4 (@shawmakesmagic X Post dated 10/26/2026) at 1. Through SlopCash, Walters established the "PUMPFUN-SOURCE" project, that had the stated objective to "[r]everse engineer" the Pump.fun smart contracts byte-for-byte into open source with a "10m $PMUP [per month] target." Ex. 10 (@shawmakesmagic X Post dated 10/28/2026) at 1; Ex. 11 (slop.cash PUMPFUN-SOURCE project) at 1.

34. On October 29, 2026, Walters announced that 10m $PMUP had been loaded in the vault on SlopCash and urged the public that "[i]f you want to make some money, consider helping us to reverse engineer Pump.fun, that [a]ll you need is an agent," and that "Grok Bot, Hermes, OpenClaw, ChatGPT, Claude, any will do it." Ex. 12 (@shawmakesmagic X Post dated 10/29/2026) at 1.

35. When Plaintiffs became aware of Walters' activities, it promptly took action. On October 29, 2026, BCI, through counsel, served Walters with a cease-and-desist letter (the "Letter"), demanding that Walters immediately stop his unlawful activities. Ex. 13 (10/29/2026 Cease and Desist Letter from Palley to Walters).

36. Walters publicly acknowledged the letter, refused to cease and desist, and affirmatively represented that he would continue his efforts. Ex. 14 (@shawmakesmagic X Post dated 10/30/2026) at 1; *see also* Ex. 8 (Binance Screenshot dated 10/30/2026) at 1.

37. As of October 30, 2026, the Repository is still operational and is actively being forked. Ex. 15 (11/01/2026 Repository screenshot). Further, the slop.cash PUMPFUN-SOURCE project is also active and has active contributors. Ex. 11 (slop.cash PUMPFUN-SOURCE project) at 1-2.

38. Walters's public statements, both before and after receipt of the Letter, demonstrate that he knew the Source Code belonged to BCI and that his objective was to reproduce it as precisely as possible. Ex. 15 (11/01/2026 Repository screenshot) at 1.

39. The degree of similarity Walters represented in his social media posts about the Pump.fun Source Code he stole demonstrates that he did not "reverse engineer" it, like in a clean room. For example, Walters reported that 3,321 of 3,338 function windows matched across the Pump.fun contract set and that several deployed programs had been reproduced completely, including the Fees, Mayhem, and Donation Relay components. Ex. 6 (@shawmakesmagic X Post dated 10/29/2026) at 1. Such a function-for-function match of that degree is not achievable through independent development from publicly available information alone. Walters had to have improperly accessed and used the Pump.fun Source Code to make such claims.

40. Walters also has announced that his Slop Cash venture, which is where he will use the Pump.fun Source Code that he has stolen, will open a token sale on or about November 5, 2026, and that purchasers on Umia acquire ownership of a project's associated intellectual property. Ex. 17 (@shawmakesmagic X Post dated 10/26/2026) at 1.

41. As of November 1, 2026, the Repository already has 200 forks. Ex. 15 (11/01/2026 Repository screenshot) at 1. As the Pump.fun Source Code in the Repository is further disseminated, forked, mirrored, and republished across the Internet, additional copies are created outside of Plaintiffs' control, increasing the scope of the distribution because Walters put the stolen Pump.fun Source Code in a public Repository.

42. Further, in an X post, dated October 30, 2026, Walters stated that he was still "reverse engineering" Pump.fun's contracts and described the effort as "[c]lean room reverse engineering" that is "100% legal" and "settled law." Ex. 14 (@shawmakesmagic X Post dated 10/30/2026) at 1. Walters's post further implies that he continues to direct AI agents to work on for him on his efforts because "the only thing that can stop a bad guy with a model is a good guy with a model." Ex. 14 (@shawmakesmagic X Post dated 10/30/2026) at 1.

43. While Walters has seemingly removed the original Repository, he appears to be working in concert with at least Doe 1. Doe 1—operating the X account "@ReversePumpfun," the GitHub account "ReversePump," and the website reversepump.fun—cloned and republished the Repository in its entirety, including Walters' approximately 9,000 commits, describing it as "a complete, commit-by-commit restoration" of Walters' work. Ex. 19 (Reverse Pump X Landing Page) at 1; Ex. 20 (Reverse Pump X Post dated 11/2/2026) at 1. Doe 1 also published the Pump.fun Source Code under a falsified MIT license granting to the "pump.fun contributors" and, like Walters,

represented that it was a byte-by-byte match. Ex. 21 (Reverse Pump GitHub Repo Page); Ex. 22 (Reverse Pump GitHub MIT License).

44. Doe 1 is using the Pump.fun Source Code to build, promote, and commercialize a competing token-launchpad that directly rivals Pump.fun. Doe 1 publicly stated it is "building a brand-new launchpad in public," "developing the next generation of permissionless token launches," "[p]owered by $PMUP," with "[p]latform fees -> buybacks & burns" and "50% of fees -> funding development of the launchpad" and solicits users, developers, and token purchasers through GitHub, X, and reversepump.fun by trading on Plaintiffs' name and brand. Ex. 23 (Reverse Pump X Post dated 11/2/2026) at 1. Doe 1 further proclaimed that "PumpFun is open source again for everyone." Ex. 23 (Reverse Pump X Post dated 11/1/2026) at 3.

45. Doe 1 appears to be acting in coordination with Walters, diverting "50% of the creator fees . . . to @shawmakesmagic," inviting Walters to "finish the mission," and stating it "took immense effort to continue your mission. Ex. 24 (Reverse Pump X Post Dated 11/1/2026) at 1.

46. Doe 2 operates the X account "@ShayanelH" (display name "shayanel h.") and the GitHub account "shawkkkkk," and identifies himself publicly as "$BASEJUICE CTO // Beam Launchpad" and a "[p]rev part-time Dev @coinbase." Ex. 25 (@ShayanelH X Page) at 1; Ex. 26 (shawkkkkk GitHub Page) at 1. Doe 2 acquired and disseminated the Pump.fun Source Code by maintaining a "pumpfun-source" repository forked from Walters' misappropriated Source Code, and publicly stated: "After helping to reverse engineer Pumpfun with $PMUP (the @Pumpfun open source), I'm using it to build a refreshed launchpad exactly byte by byte." Ex. 27 (@ShayanelH X Post dated 11/2/2026) at 1; Ex. 26 (shawkkkkk GitHub Page) at 1 (showing the cloned pumpfun-source Repository).

47. Doe 2 is using the misappropriated Pump.fun Source Code to develop, promote, and commercialize a competing launchpad called "Beam," hosted at the live, actively developed GitHub repository "shawkkkkk/beam," which incorporates an "archived pumpfun-source snapshot" of 380 files preserved from the Repository. Ex. 28 (Beam Repository) at 1. Doe 2 solicits users and developers to build Beam, directing the public to "contribute to github.com/shawkkkkk/beam," "open PRs," and "[b]ring your coding agent," and stating that contributors will be rewarded "with Beam tokens after we launch on our launchpad." Ex. 27 (@ShayanelH X Post Dated 11/2/2026) at 1. Doe 2 acted knowingly, acknowledging that his project is "not affiliated with pumpfun nor shaw" and that he was "poking the bear." Ex. 27 (@ShayanelH X Post Dated 11/2/2026) at 1.

48. On information and belief, Doe 1 and Doe 2 are active participants in the cryptocurrency community, users of the Pump.fun platform, and in particular participants in the Pump.fun community, such that Plaintiffs are informed and believed that each assented to and is bound by the Terms. *See, e.g.*, Ex. 29 (showing Doe 2 as a Pump.fun user). Each knew, or had reason to know, that the Source Code was Plaintiffs' proprietary, non-public property. Each repeatedly attributed the code to Pump.fun, labeling it the "PumpFun Contracts" and the "@Pumpfun open source," and promoted byte-by-byte derivations of the misappropriated Source Code. Ex. 20 (Reverse Pump X Post dated 11/2/2026) at 1; Ex. 27 (@ShayanelH X Post dated 11/2/2026) at 1.

**<u>COUNT I</u>**
**(Trade Secret Misappropriation (DTSA 18 U.S.C. § 1836))**

49. Plaintiffs repeat, reallege, and incorporate by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

50. The Pump.fun Source Code includes trade secrets and highly confidential and proprietary information that derives independent economic value from not being known to the public

or other persons who could obtain economic value from their disclosure or use, including backend application code containing confidential technical information, including software programs, methods, techniques, system architecture, implementation details, and processes used to operate the Pump.fun platform. The secrecy of this information gives a competitive advantage over actual and potential competitors.

51. The Pump.fun Source Code is the subject of efforts that were reasonable under the circumstances to maintain their secrecy, as there was substantial investment to develop the code. The Pump.fun Source Code maintains its confidentiality through technical, contractual, and other access restrictions, including with the required Terms and Conditions needed for anyone to use and access the Pump.fun platform.

52. Walters unlawfully acquired, used, disclosed, and relied upon Plaintiffs' trade secrets and highly confidential and proprietary information without Plaintiffs' express or implied consent for an improper purpose of making the Source Code public information and using it. Among other things, the Pump.fun Source Code, which includes its backend application code, confidential implementation details, system architecture, and related technical materials, are not publicly disclosed and were not authorized for public use, reproduction, or distribution. Walters nevertheless publicly represented that he was creating a "byte-identical" copy of Pump.fun's software, including its frontend, backend, and application code, and reported match rates approaching 100%. He stated he did so for the purpose of making it public and to make unauthorized use of the Pump.fun Source Code for his personal benefit. Ex. 4 (@shawmakesmagic X post dated 10/26/2026) at 1.

53. Walters misappropriated Plaintiffs' trade secrets and highly confidential information by acquiring, disclosing, and using Plaintiffs' trade secrets through improper means. As a Pump.fun user, Walters agreed to Plaintiffs' Terms and Conditions that expressly prohibited reverse

engineering, copying, reproducing, republishing, sublicensing, creating derivative works from Pump.fun intellectual property. He intentionally violated his obligations under the Terms and Conditions as he impersonated Googlebots to obtain the highly confidential and trade secret Pump.fun Source Code. There can be no question that his misappropriation was malicious and willful, as he deliberately disguised the origin of his automated program masquerading as Googlebots to hide the fact that he was sending a cloaked intruder to steal the Pump.fun Source Code. In violation of Plaintiffs' Terms and Conditions, Walters used his automated crawler to bypass the security measures on the Pump.fun website to collect hundreds of files and tens of millions of bytes of material from Pump.fun infrastructure, including website, application, and other platform materials.

54. Walters disclosed and used Plaintiffs' trade secrets and confidential information. He publicly published the stolen code in the Repository. He also encouraged third parties to continue the unlawful scheme, and accepted and merged their contributions to the Repository. He also promoted his scheme and the resulting work through the PUMPFUN-SOURCE project and related slop.cash activities.

55. At all relevant times, Walters knew, or had reason to know, that the information belonged to Plaintiffs, was proprietary and non-public, and had been acquired, used, or disclosed in violation of Plaintiff's Terms and Conditions, as well as Plaintiffs' intellectual property rights. Otherwise he would not have disguised his automatic program as a Googlebot or make efforts to hack through security measures to access the Pump.fun infrastructure.

56. Does 1 and 2 also misappropriated Plaintiffs trade secrets. Each acquired, used, disclosed, or disseminated the Pump.fun Source Code knowing, or having reason to know, that it constituted Plaintiffs' proprietary, non-public property and that its acquisition and disclosure

violated Plaintiffs' Terms and Conditions. Each repeatedly identified the code as belonging to Pump.fun, describing it as the "PumpFun Contracts" and the "@Pumpfun open source," promoting a purported byte-for-byte copy of Plaintiffs' programs, and acknowledging Plaintiffs' ownership of and claims to the Source Code. Both Does also acted after knowing that Walters had received a cease and desist letter from BCI based on his misconduct.

57. Despite that knowledge, each used and disclosed the Source Code without Plaintiffs' authorization. Doe 1 hosts the Source Code through the ReversePump/pumpfun-source repository and used the Source Code to develop, market, and commercialize the ReversePump launchpad. Doe 2 forked, copied, incorporated, promoted, and used the Source Code in connection with the Beam launchpad and solicited developers and users to contribute to and utilize products derived from the Source Code.

58. Defendants' misappropriation has caused and continues to cause Plaintiffs' damages and irreparable injury. Indeed, Defendants' have continued the foregoing conduct after BCI's Letter and, in response to the Letter, has affirmatively stated he will not stop his unlawful activities.

59. Defendants' misappropriation is willful and malicious and thereby entitles Plaintiffs to an award of exemplary damages.

60. Defendants' misappropriation of Plaintiffs' trade secrets and confidential information has caused and will continue to cause Plaintiffs irreparable and substantial injury and therefore cannot be fully redressed through damages alone. An injunction prohibiting Defendants' from further use or disclosure of Plaintiffs' trade secrets is necessary to provide Plaintiffs with complete relief.

**COUNT II**
**(Trade Secret Misappropriation (CUTSA Cal. Civ. Code §§ 3426 *et seq.*))**

61. Plaintiffs repeat, reallege, and incorporate by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

62. The Pump.fun Source Code constitutes trade secrets and highly confidential and proprietary information that derives independent economic value from not being known to the public or other persons who could obtain economic value from their disclosure or use.

63. Plaintiffs have taken reasonable measures to maintain the secrecy of its trade secrets and highly confidential information.

64. Walters misappropriated Plaintiffs' trade secrets and confidential information by acquiring, disclosing, and using Plaintiffs' trade secrets through improper means. In violation of Plaintiffs' Terms and Conditions and without Plaintiffs' consent, Walters used a forged "Googlebot" that impersonated Google's search-engine crawler to steal the Pump.fun Source Code.

65. Walters unlawfully acquired, disclosed, and used Plaintiffs' trade secrets and highly confidential information for an improper purpose to make the code public and to benefit himself financially.

66. Walters obtained and used Plaintiffs' trade secrets and highly confidential and proprietary information while knowing, or having reason to know, that the information was subject to restrictions prohibiting its reproduction, disclosure, dissemination, and unauthorized access.

67. Walters knew, or had reason to know, that the materials on which he relied belonged to Plaintiffs, were not publicly released by Plaintiffs, and were not authorized for public reproduction, publication, distribution, or commercialization.

68. Walters has continued his conduct even after receiving notice of Plaintiffs' rights and objections, demonstrating additional knowledge that the materials belong to Plaintiff and are not authorized for public reproduction, publication, distribution, or commercialization.

69. Does 1 and 2 also misappropriated Plaintiffs' trade secrets and confidential information by acquiring, disclosing, and using Plaintiffs' trade secrets through improper means. In violation of Plaintiffs' Terms and Conditions and without Plaintiffs' consent, Does 1 and 2 further copied and disseminated the Pump.fun Source Code.

70. Does 1 and 2 unlawfully acquired, disclosed, and used Plaintiffs' trade secrets and highly confidential information for an improper purpose to make the code public and to benefit themselves financially.

71. Does 1 and 2 obtained and used Plaintiffs' trade secrets and highly confidential and proprietary information while knowing, or having reason to know, that the information was subject to restrictions prohibiting its reproduction, disclosure, dissemination, and unauthorized access.

72. Does 1 and 2 knew, or had reason to know, that the materials on which they relied belonged to Plaintiffs, were not publicly released by Plaintiffs, and were not authorized for public reproduction, publication, distribution, or commercialization.

73. Does 1 and 2 have continued their conduct even after receiving notice of Plaintiffs' rights and objections, demonstrating additional knowledge that the materials belong to Plaintiff and are not authorized for public reproduction, publication, distribution, or commercialization.

74. As a result of Defendants' misappropriation, Plaintiffs have suffered and continue to suffer harm, including the loss of secrecy associated with its confidential software and technical information, impairment of the value of its trade secrets, competitive injury, investigation and remediation costs, and other damages according to proof.

75. Defendants' misappropriation has caused and continues to cause Plaintiffs damages and irreparable injury.

76. Defendants' misappropriation is willful and malicious and thereby entitles Plaintiffs to an award of exemplary damages.

77. Defendants' misappropriation of Plaintiffs' trade secrets and confidential information has caused and will continue to cause Plaintiffs irreparable and substantial injury and therefore cannot be fully redressed through damages alone. An injunction prohibiting Defendants from further use or disclosure of Plaintiffs' trade secrets is necessary to provide Plaintiffs with complete relief

**COUNT III**
**(Breach of Contract)**

78. Plaintiffs repeat, reallege, and incorporate by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

79. Plaintiffs' Terms and Conditions constitute a valid and binding agreement between Plaintiffs and users of the Pump.fun platform. Plaintiff's Terms and Conditions protects the Pump.fun intellectual property, and users of the platform must assent to Plaintiffs' Terms and Conditions as a condition of accessing and using the platform.

80. Walters assented to Plaintiffs' Terms and Conditions, as he accesses and uses the Pump.fun platform, including as a creator who launched coins and received creator-fee distributions through the platform.

81. Walters' conduct violated multiple provisions of the Terms and Conditions.

82. For example, Walters breached Section 21(j) of the Terms by disassembling, decompiling, allegedly reverse engineering, and otherwise attempting to derive the Source Code, object code, underlying concepts, ideas, and algorithms of the Pump.fun platform and its components.

83. Additionally, Walters breached Section 21(k) by copying, reproducing, downloading, storing, transmitting, disseminating, publishing, mirroring, and creating derivative works from the Pump.fun software, code, website assets, and other Pump.fun intellectual property, including materials captured from the platform and republished through the Repository.

84. Further, Walters breached Section 21(h) by using disguised web crawlers, bots, and other automated means to unlawfully obtain materials, documents, and information that is highly confidential and constitutes trade secret information, which Plaintiffs do not provide publicly, and which Plaintiffs maintain as highly confidential and trade secret information.

85. Walters further used, reproduced, distributed, and purported to license Pump.fun intellectual property, in violation of Plaintiffs' Terms and Conditions and Plaintiffs' IP rights, including by publishing materials through the Repository under a forged MIT license bearing the notice "Copyright (c) 2026 Shaw."

86. Additionally, on information and belief, Does 1 and 2 are users of Pump.fun who assented to and are bound by Plaintiffs' Terms and Conditions as a condition of accessing and using Pump.fun.

87. On information and belief, each breached Section 21(j) by contributing to the "reverse-engineering" and derivation of the Source Code; Section 21(k) by copying, reproducing, downloading, republishing, mirroring, and creating derivative works from the Source Code and other Pump.fun intellectual property; and Section 21(h) by using automated means to obtain non-public materials, including through admitted use of AI agents.

88. As a direct and proximate result of Defendants' breaches, Plaintiffs have suffered and continue to suffer damages, including investigation and response costs, costs incurred to protect and

enforce their intellectual-property rights, loss of the exclusivity, confidentiality, and value of Pump.fun software and related assets, competitive injury, and other damages according to proof.

89. Plaintiffs request judgment against Defendants and seek damages, injunctive relief, restitution, costs, attorneys' fees where permitted by law, and such other relief as the Court deems just and proper pursuant to Cal. Civ. Code §§ 3300 *et seq*.

**COUNT IV**
**(Conversion)**

90. Plaintiffs repeat, reallege, and incorporate by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

91. BCI owns the Pump.fun Source Code and it is a property right independent of its status as trade secrets and confidential information and has value to BCI independent of any trade secret information.

92. Walters intentionally and willfully exercised dominion and control over the Pump.fun Source Code in a manner inconsistent with BCI's rights in the code. As described above, Walters accessed, acquired, obtained, and appropriated the Pump.fun Source Code without authorization. Walters then reproduced, copied, distributed, and used these materials for his own benefit by placing them into the Repository, publishing them to third parties, purporting to license them under his own name, and utilizing them in connection with his slop.cash venture. He further sought to encourage others to copy, distribute and use the stolen Source Code.

93. Walters' conduct substantially interfered and continues to interfere with BCI's ownership and possessory rights in the Source Code and was undertaken without BCI's consent. For example, Walters has assumed control of the Pump.fun Source Code and applied the property to his own use by acquiring the Pump.fun Source Code without authorization, copying and making them public, affixing a fraudulent MIT license in his own name purporting to authorize the public to use,

copy, modify, distribute, sublicense, and sell it, and representing that it is now both "open source" and part of the PUMPFUN-SOURCE project on slop.cash.

94. Walters seeks to completely extinguish BCI's rights by acting to render the Pump.fun Source Code completely open source.

95. As a direct and proximate result of Walters's conduct, BCI has suffered and continues to suffer economic harm, including lost revenue, loss of the exclusivity and commercial value of its Source Code and related intellectual property, diminished competitive advantage, disruption of existing and prospective business relationships, and other damages according to proof.

96. BCI requests judgment against Walters and seeks damages, injunctive relief, restitution, costs, attorneys' fees where permitted by law, and such other relief as the Court deems just and proper pursuant to Cal. Civ. Code §§ 3300 et seq.

**COUNT V**
**(Intentional Interference with Contractual Relations)**

97. Plaintiffs repeat, reallege, and incorporate by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

98. Plaintiffs have valid contracts, namely Plaintiffs' Terms and Conditions, with users of the Pump.fun platform. By creating accounts, accessing the platform, and using Pump.fun's services, users like Walters agree to be bound by the Terms and Conditions. Users agree not to engage in prohibited conduct identified in the Terms and Conditions, such as copying, reproducing, and creating derivative works from Pump.fun software and intellectual property, including through use of web scrapers or other automated means. Thus, Walters has actual knowledge of Plaintiffs' Terms and Conditions.

99. Walters intentionally engaged in conduct designed to disrupt these relationships governed by Plaintiffs' Terms and Conditions. Walters organized and encouraged a collaborative

effort to steal and reproduce Pump.fun's Source Code using automated means. Through the Repository and related public communications including on X, Walters solicited, incentivized, and directed third parties to breach Plaintiffs' Terms and Conditions by contributing to his efforts to steal and further distribute the Pump.fun Source Code, including by pointing out that "[a]ll you need is an agent . . . Grok Bot, Hermes, OpenClaw, ChatGPT, Claude, any will do it." Ex. 12.

100. On information and belief, the contributors recruited by Walters were users of the Pump.fun platform and were bound by the Terms and Conditions. Walters knew that disruption of Plaintiffs' relationships with these users was certain or substantially certain. He went so far to compensate the contributors with a $PMUP token "bounty" for contributing to the Repository. Ex. 4.

101. Walters' conduct disrupted and interfered and continues to disrupt and interfere with Plaintiffs' contractual relationships with users of Pump.fun by inducing or encouraging conduct prohibited by Plaintiffs' Terms and Conditions. Walters continued this conduct even after receiving BCI's Letter. Thus, Walters' conduct is willful and malicious.

102. Does 1 and 2 likewise intentionally interfered with Plaintiffs' contractual relationships with users of the Pump.fun platform. Each intentionally solicited, induced, encouraged, and facilitated violations of those Terms by third parties.

103. The Does did so by republishing and promoting the Source Code, maintaining public repositories open to contribution, encouraging others to copy, reproduce, fork, modify, and build upon the Pump.fun Source Code, and soliciting participation through GitHub, X, and their websites.

104. The Does knew that users' access to, use of, and dissemination of the Source Code would violate Plaintiffs' Terms and Conditions and acted with the intent to cause, or with knowledge that their conduct was substantially certain to cause, such violations.

105. As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered and continue to suffer injury and damage, including investigation and response costs, harm to the value and exclusivity of its Source Code and related intellectual property, disruption of its contractual relationships with platform users, instructions to third parties to violate their contract with Plaintiffs, and other damages according to proof.

106. Plaintiffs request judgment against Defendants and seek damages, injunctive relief, restitution, costs, attorneys' fees where permitted by law, and such other relief as the Court deems just and proper pursuant to Cal. Civ. Code §§ 3300 *et seq.*

## COUNT VI
**(False Advertising (Cal. Bus. & Prof. Code §§ 17500 *et seq.*))**

107. Plaintiffs repeat, reallege, and incorporate by reference the allegations of the preceding paragraphs as if fully set forth herein.

108. In connection with Walters' unlawful conduct described above, Walters represented that the code is "open source" software that members of the public may freely use, copy, modify, distribute, sublicense, and sell, that he owns and may license the code, which he labeled as his creation with the following notice: "Copyright (c) 2026 Shaw."

109. Walters made such false representations to encourage members of the public to adopt, contribute to, build upon, commercialize, and invest in the reconstruction and related slop.cash projects.

110. Those representations were false or misleading as Walters was not authorized to reproduce, distribute, publish, sublicense, or otherwise exploit the Pump.fun Source Code or related proprietary materials.

111. Walters knew that the foregoing representations were false or misleading. Walters masterminded the scheme to steal the Pump.fun Source Code, created and maintained the

Repository, published the code with his own name, and continued making the foregoing representations even after receiving BCI's Letter. Thus, Walters' conduct is willful and malicious.

112. Does 1 and 2 made the same category of false and misleading representations to the public. For example, Doe 1 represented that the Pump.fun code is "open source again for everyone," offered it under a falsified MIT license, and promoted "ReversePump" as a "fair launchpad" built from the misappropriated Source Code to induce the public to adopt, contribute to, build upon, and invest in it. Doe 2 similarly promotes "Beam" as a legitimate launchpad built on the misappropriated Pump.fun Source Code.

113. Those representations are false or misleading because neither Doe was authorized to reproduce, distribute, publish, sublicense, or exploit the Pump.fun Source Code, and the Does made them knowing they were false or misleading.

114. As a direct and proximate result of Walters' false and misleading representations, Plaintiffs have suffered and continue to suffer injury in fact and have lost money or property, including diversion of users, developers, and contributors, diminished goodwill, impairment of the value and exclusivity of Plaintiffs' Source Code and related intellectual property, and other economic injury according to proof.

115. Unless restrained by this Court, Walters will continue disseminating false and misleading statements. Plaintiffs are therefore entitled to injunctive relief, restitution, and such other equitable relief as permitted by Cal. Bus. & Prof. Code § 17535.

## COUNT VII
**(False Designation of Origin)**
**(Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a))**

116. Plaintiffs repeat, reallege, and incorporate by reference the allegations of the preceding paragraphs as if fully set forth herein.

117. BCI owns valid and protectable common-law marks and trade dress and Baton lawfully uses those common-law marks and trade dress as the exclusive source of the Pump.fun platform and services, including: (a) the PUMP.FUN word mark (PUMP.FUN); (b) the capsule design marks; and (c) the distinctive overall look-and-feel and visual presentation of the Pump.fun website and interface (the "Pump.fun Trade Dress").

118. BCI has applied to register the PUMP.FUN mark and certain capsule-design marks with the United States Patent and Trademark Office, which remain pending.

119. The Pump.fun marks and Pump.fun Trade Dress are used on the Pump.fun website. The PUMP.FUN word mark, capsule designs, and Pump.fun Trade Dress are distinctive and have acquired extensive recognition within the marketplace as identifying them as part of the genuine Pump.fun platform. These marks and trade dress have been used continuously and extensively in commerce in connection with the Pump.fun platform and services. For example, the marks and Pump.fun Trade Dress are prominently displayed and used throughout the operation, promotion, and commercialization of the platform, including on the Pump.fun website, application interfaces, social-media channels, documentation, and related services

120. Walters used the PUMP.FUN mark, capsule-design marks, brand identity, and Pump.fun Trade Dress in commerce without authorization in connection with his scheme to steal and use the Pump.fun Source Code, which includes website materials, design assets, branding, and visual elements.

121. Walters' unauthorized use of the marks, brand, and website trade dress, including in the Repository, is likely to cause confusion, mistake, and deception among developers, contributors, users, token purchasers, and other members of the relevant public as to the source, sponsorship, affiliation, connection, authorization, or approval of the reconstructed materials.

122. Because Walters intentionally recreated Pump.fun's branding, visual presentation, and associated materials while simultaneously promoting the project under the Pump.fun name, consumers are likely to believe that his scheme was authorized by, affiliated with, sponsored by, or endorsed by Plaintiffs, when it is not.

123. The likelihood of confusion is further demonstrated by the strength and widespread recognition of the PUMP.FUN mark and Pump.fun Trade Dress, Walters' deliberate use of the Pump.fun name, branding, and reputation in promoting his scheme, Slop Cash, and related projects, and Walters' stated objective of creating a version of Pump.fun that was "byte-identical" to the original. The materials Walters stole included website materials, design assets, visual elements, and other features associated with Pump.fun's Trade Dress.

124. The likelihood of confusion is further heightened because Walters operates in the same Solana token-launch ecosystem as Pump.fun, targets the same users, developers, creators, and token purchasers, use the same channels of trade and promotion, and offers closely related services. Walters' repeated references to Pump.fun by name, his efforts to replicate Pump.fun as closely as possible, and his promotion of his scheme as a substitute for the original platform further demonstrate an intent to capitalize on the goodwill associated with the marks, brand, and trade dress. Walters has willfully continued his unlawful conduct, even after receiving BCI's Letter. Thus, Walters' conduct is willful and malicious.

125. Doe 1 used the PUMP.FUN name and brand in commerce as a source identifier to create, promote, and solicit users for its competing "ReversePump" launchpad—branding itself "ReversePump," proclaiming that "PumpFun is open source again," and describing its product as a launchpad built from "PumpFun Contracts." Doe 1's use of Plaintiffs' marks to market a competing product is likely to cause confusion, mistake, or deception among developers, contributors, users,

and token purchasers as to the source, sponsorship, affiliation, or approval of ReversePump, including the false impression that it is an authorized continuation of Pump.fun.

126. Further, Doe 2's promotion of "Beam" as a launchpad built on Pump.fun's Source Code, which Doe 2 misleadingly characterizes as "open source," likewise trades on and exploits the goodwill associated with Plaintiffs' marks. By repeatedly identifying the Source Code as originating from Pump.fun and promoting Beam by reference to Pump.fun, the Pump.fun Source Code, and Pump.fun's technology, Doe 2 uses Plaintiffs' marks, brand identity, and goodwill to attract users, developers, and customers to a competing product.

127. Plaintiffs have suffered and continue to suffer injury as a result of Defendants' conduct, including diversion of users, loss of control over its PUMP.FUN marks and the reputation and goodwill associated with them. Unless restrained by this Court, Defendants' conduct will continue to cause irreparable harm.

128. Plaintiffs are entitled to injunctive relief under 15 U.S.C. § 1116; to recover Defendants' profits, Plaintiffs' damages, and costs under 15 U.S.C. § 1117(a), together with enhanced damages and, in this exceptional case, reasonable attorneys' fees; and to delivery up and destruction of infringing materials under 15 U.S.C. § 1118.

**COUNT VIII**
**(Unfair Competition (Cal. Bus. & Prof. Code §§ 17200 *et seq*.))**

129. Plaintiffs repeat, reallege, and incorporate by reference the allegations of the preceding paragraphs as if fully set forth herein.

130. Walters engaged, and continues to engage in unlawful business acts and practices, as set forth in the preceding counts, all of which are independently actionable as an unlawful business practice.

131. Walters' conduct is also unfair competition because Baton competes in the Solana token market. He misappropriated the Pump.fun Source Code, and proprietary software, code, website assets, and related intellectual property for his stated purpose of using it to develop, create, promote, and commercialize competing products and services without incurring the substantial time, expense, and resources required to independently develop those materials.

132. Walters' conduct is also fraudulent. By labeling the stolen code as "open source" and labeling with the notice "Copyright (c) 2026 Shaw," he has falsely represented that he is the author of a valid copyright, and he is representing to the public that it can be freely used, copied, modified, distributed, sublicensed and sold. Walters' representations are likely to deceive the public.

133. Walters has further represented that he will use the stolen code in the slop.cash project and related commercial ventures. Through the Repository, the PUMPFUN-SOURCE project, and associated bounty programs, Walters has encouraged and facilitated the reproduction, dissemination, and continued distribution of the Pump.fun Source Code and proprietary materials. Walters seeks to obtain a competitive advantage unavailable to competitors who respect intellectual-property rights, contractual restrictions, and platform access controls.

134. The Does engaged in and continue to engage in unlawful business acts and practices, as set forth in the preceding counts, all of which are independently actionable as an unlawful business practice.

135. The Does' conduct is also unfair because each misappropriated the Pump.fun Source Code to develop and commercialize competing launchpads—ReversePump and Beam—without incurring the substantial time, expense, and resources required to develop those materials independently.

136. The Does' conduct is fraudulent because each represented to the public that the stolen code is "open source" and free to use, copy, and commercialize when it is not.

137. As a direct and proximate result of Defendants' unlawful, unfair, fraudulent business acts and practices, Plaintiffs have suffered injury in fact and lost money or property, including investigation and response costs, harm to the exclusivity and value of its software and related intellectual property, competitive injury, and other damages according to proof.

138. Unless restrained by this Court, Defendants' unlawful and unfair business acts and practices will continue to cause immediate and irreparable harm to Plaintiffs. Plaintiffs are therefore entitled to injunctive and other equitable relief pursuant to Cal. Bus. & Prof. Code § 17203.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment and relief as follows:

A. A temporary restraining order and preliminary and permanent injunctions enjoining Defendants and all persons in active concert with them from (i) further theft, alleged reverse-engineering, copying, or reproducing the Pump.fun Source Code; (ii) publishing, distributing, or otherwise making available, including through any public or private code repository, the Pump.fun Source Code or any derivative, copy, or reproduction of it, and requiring removal of the lalalune/pumpfun-source repository and any copies, including ensuring that it is not accessible to Walters or to the public; (iii) soliciting, inducing, directing, or compensating any other person to do any of the foregoing, and requiring removal of the related bounties and solicitations; and (iv) using or disclosing Plaintiffs' trade secrets.

B. A temporary restraining order and preliminary and permanent injunctions enjoining Defendants and all persons in active concert with him from using the trademarks and trade dress at issue;

C. A temporary restraining order and preliminary and permanent injunctions enjoining Defendants from making false representations regarding the stolen Pump.fun Source Code and the code in any public repository;

D. A temporary restraining order and preliminary and permanent injunctions enjoining Defendants from interfering with Plaintiffs' contractual relationships with users of Pump.fun.

E. An order requiring Defendants' to identify and destroy all copies of Pump.fun Source Code and any reproduced code in his possession, custody, or control, to account for every person to whom he has made any portion available, and to ensure that no code is accessible to Defendants or in the public domain;

F. Damages for Plaintiffs' actual damages, lost profits, and Walters' profits, actual loss and unjust enrichment and exemplary damages for Walters' willful and malicious conduct, including, but not limited to, trade-secret misappropriation under 18 U.S.C. § 1836(b) and Cal. Civ. Code § 3426.3; contract damages under Cal. Civ. Code § 3300; restitution under Cal. Bus. & Prof. Code § 17203; false advertising, and interference damages according to proof;

G. Plaintiffs' costs and reasonable attorneys' fees under 18 U.S.C. § 1836(b), and Cal. Civ. Code § 3426.4, and any other applicable law; and

H. Such further and other relief as the Court may deem proper and just.

## JURY DEMAND

Plaintiffs demand a jury trial on all issues so triable.

Respectfully Submitted,

Dated: November 2, 2026

By: */s/ Lisa Kobialka*

LISA KOBIALKA (State Bar No. 191404)
JAMES HANNAH (State Bar No. 237978)
Brown Rudnick LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065
Telephone: (669) 469-1800
Facsimile: (669) 469-1801
Email: lisa.kobialka@brownrudnick.com
Email: james.hannah@brownrudnick.com

*Attorney for Plaintiffs*
Bracket Company Inc. and
Baton Corporation Ltd.